**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | )      **Criminal No. 06-290 (RMC)** |
| | ) |
| **KHALED MOHAMED SHABBAN** | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

**DEFENDANT KHALED MOHAMED SHABBAN'S
MOTION TO SUPPRESS STATEMENTS AND INCOPORATED
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Defendant Khaled Mohamed Shabban, is charged in a one-count indictment with parental kidnapping, in violation of 18 U.S.C. § 1204. He now moves this Court to suppress a statement he allegedly made to government agents on September 25, 2006.

**INTRODUCTION**

On September 25, 2006, while in custody, Mr. Shabban, an Egyptian citizen, was interviewed in English by Federal Bureau of Investigation agents Shane Dana and Anthony Willett, without first being read the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966) in Arabic. Mr. Shabban has difficulty understanding English, particularly in stressful situations. He did not understand that he had rights, and he did not understand that he was waiving them. Mr. Shabban, therefore, seeks to suppress all statements made to the agents because the interview violated his rights under the Fifth and Sixth Amendments to the United States Constitution.

**STATEMENT OF FACTS**

The following facts can fairly be inferred from the court proceedings in this matter, the discovery provided by the government thus far and the materials referenced in this motion. Mr.

Shabban is a citizen of Egypt. Criminal defendants do not enjoy the same constitutional rights as those accused in the United States.

On September 25, 2006, while in custody, Mr. Shabban was interviewed in English by Special Agents Shane Dana and Anthony Willett, without first being advised of his *Miranda* rights in Arabic and without the benefit of counsel. Special Agent Dana orally advised Mr. Shabban of his *Miranda* rights in English. Neither agent speaks Arabic. Neither agent advised Mr. Shabban orally or in writing that he was entitled to speak with his Consulate. Mr. Shabban allegedly signed a *Miranda* waiver. According to reports provided by the government, Mr. Shabban incriminated himself. Neither agent asked Mr. Shabban to write down what he apparently told the agents. Instead, Special Agent Dana wrote out a statement. He did not ask Mr. Shabban to read this aloud. According to Special Agent Dana, Mr. Shabban "reviewed" the statement, but he refused to sign it.

Mr. Shabban has difficulty understanding English. In fact, this Court has appointed an interpreter to assist him in understanding what is said during court proceedings.

**ARGUMENT**

I.     **The Government Bears The Burden Of Showing That Mr. Shabban's Waiver Was Knowing And Intelligent.**

The Court must presume that Mr. Shabban did not waive his Fifth and Sixth Amendment rights. The burden of showing the admissibility of Mr. Shabban's statements rests with the United States. *Brown v. Illinois*, 422 U.S. U.S. 590, 604 (1975). In order to shoulder this burden, the prosecution must establish, by a preponderance of the evidence, that under the "totality of the circumstances," a knowing *Miranda* waiver was given, *Colorado v. Connelly,*

2

479 U.S. 157, 169 (1986), and any confession was voluntary, *Lego v. Twomey,* 404 U.S. 477, 489 (1972).

## II.    Mr. Shabban Did Not Knowingly And Intelligently Waive his *Miranda* Rights.

In *Miranda,* the Supreme Court held that the government may not use statements "stemming from custodial interrogation" unless the defendant is informed of his right to remain silent, that any statement that he makes can be used against him and that he has the right to an attorney.    384 U.S. at 444-45.    The Supreme Court defined custodial interrogation as "questioning initiated by a law enforcement officer after a person has been taken into custody or otherwise deprived of his freedom of action in any way." *Id.*

Defendants may waive these rights if such waivers are made voluntarily, knowingly and intelligently. *Id.*  The inquiry into whether a waiver meets this standard has two distinct prongs:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine,* 475 U.S. 412, 421 (1986).

Whether a waiver is knowing, intelligent, and voluntarily is inevitably a fact-driven inquiry.   "A valid waiver depends upon the totality of the circumstances including the background, experience, and conduct of defendant." *North Carolina v. Butler*, 441 U.S. 369, 374-75 (1979) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).   A central inquiry in the waiver analysis is whether the person interrogated could actually understand what was being surrendered.   The government will fail to meets its burden unless it can show the accused

comprehended his rights. *See United States v. Garibay,* 143 F.3d 534 (9th Cir. 1998)(statements by Mexican defendant found involuntary due to language and verbal IQ difficulties); *United States v. Short,* 790 F.2d 464 (6th Cir. 1986)(statements by German defendant found involuntary due to limited language ability and no understanding of U.S. criminal justice system); *United States v. Castorena-Jaime,* 117 F. Supp. 2d 1161 (D. Kan. 2000)(defendant's understanding of English insufficient to comprehend *Miranda* warning given), *aff'd,* 285 F.3d 916 (10th Cir. 2002); *United States v. Fung,* 780 F. Supp. 115 (E.D.N.Y. 1992)(Chinese defendant not given proper *Miranda* warning when only asked to read Chinese Miranda card); *United States v. Kim,* 803 F. Supp. 352 (D. Haw. 1992)(written *Miranda* warning showing defendant had circled a number of words he did not understand deemed insufficient given defendant's limited understanding of English), *aff'd,* 25 F.3d 1426 (9th Cir.), *cert. denied,* 513 U.S. 1030 (1994).

In *Garibay*, an English-speaking agent asked a Spanish-speaking suspect if he understood English.  143 F.3d at 536.  The suspect replied "yes," and the agent gave *Miranda* warnings in English.  *Id*.  The Court found that despite responding in English and having attended high school in the United States, Garibay did not have a sufficient command of English to knowingly and intelligently waive his rights.  *Id*. at 538.  Garibay was also borderline retarded.  *Id*. at 538-39.  The Court concluded that Garibay's statements had to be suppressed because he did not knowingly and intelligently waive his rights.  *Id*. at 539.

The analysis of the Court in *Garibay* is instructive.  The Court considered a number of factors in applying the "totality of circumstances" test to determine whether a waiver was knowing and voluntary.  These factors included: (1) any language difficulties encountered by the defendant during custodial interrogation, (2) the defendant's mental capacity, (3) whether the defendant signed a written waiver, (4) whether the defendant was advised of his rights in his

4

native tongue, (5) whether the defendant appeared to understand the rights, (6) whether the defendant had the assistance of a translator, (7) whether the defendant's rights were individually and repeatedly explained, and (8) whether the defendant had prior experience with the criminal justice system. *Id*. at 537-38.

In addition to these factors, the Court should also consider whether law enforcement advised Mr. Shabban of his right or granted his request to speak with the Egyptian Consulate. The Vienna Convention on Consular Relations guarantees the right of a foreign national to contact his Consulate when detained in a signatory state:

> [I]f he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that States is arrested or committed to prison or to custody pending trial or is detained in any other manner.  Any communication addressed to the consular post by the person arrested, in prison, custody, or detention shall also be forwarded by the said authorities without delay.  The said authorities shall inform the person concerned without delay of the rights under this sub-paragraph.

Vienna Convention on Consular Relations, April 24, 1963 [1970] 21 U.S.T. 77, T.I.A.S. No. 6280 ("VCCR").  In *Sanchez-Llams v. Oregon,* -- U.S. --, 126 SCt. 2669, 2674 (2006), the Supreme Court held that, assuming the Vienna Convention created enforceable individual rights, suppression of evidence *via* the exclusionary rule was not an appropriate remedy for violation of the VCCR.  A defendant may, however, according to a majority of the Court, raise a VCCR violation claim as a broader challenge to the voluntariness of his statements to law enforcement agents.  *Id.* At 2682.

In sum, the factors outlined above weigh against a finding of valid waiver in this case.

## 1.    Language Difficulties

Mr. Shabban does not understand English well.  This is demonstrated by the fact the Court has appointed an interpreter for Mr. Shabban in this case.

5

2.      **Mental Capacity**

It is well-documented that persons who refuse to speak to law enforcement officers in Egypt are beaten.  *See, e.g.,* U.S. State Dep't Country Report on Human Rights Practices – Egypt (2005), http://www.state.gov/g/drl/rls/hrrpt/2005/61687.htm.  Therefore, even if the government could somehow show that Mr. Shabban understood Agent Dana, our legal concepts have no place in Mr. Shabban's culture and, therefore, it cannot be fairly said that Mr. Shabban comprehended his rights.

3.      **Signed Written Waiver**

Mr. Shabban's signature allegedly appears on a waiver form, but the document is written in English and no one made any attempt to translate it for him.  Therefore, even if the government can prove that Mr. Shabban signed the waiver form, it does not logically follow that he understood the words printed on this piece of paper.

4.      **Advised of Rights In Native Tongue**

Mr. Shabban, an Arabic-speaker, was not advised of his rights in his native tongue.

5.      **Appearance of Understanding**

Although the government will surely argue that Mr. Shabban answered "yes" when it appeared that the agent wanted him to do so, there is no showing that he appeared to understand his rights.

6.      **Assistance of an Interpreter**

The government agents did not offer Mr. Shabban the assistance of an interpreter.

7.      **Repeated Explanation of Rights**

Although the agent spoke to Mr. Shabban (in English), when he handed the waiver to Mr. Shabban, the agent made no attempt to repeatedly explain the import of the rights and the

meaning of the waiver.  In fact, according to the documents provided by the government, Mr. Shabban read or repeated what was said to him by Agent Dana and allegedly said he understood what he said.

**8.      Prior Experience With The Criminal Justice System**

Documents provided by the government show that Mr. Shabban has had no prior experience with our criminal justice system.  Thus, the government cannot possibly show that he would have such a familiarity with his rights that would allow the Court to conclude that he understood them.  *C.f. United States v. Heredia-Fernandez*, 756 F.2d 1412, 1415 (9th Cir. 1985)(defendant's eight to ten year criminal history and fifteen prior arrests demonstrated familiarity with *Miranda* warnings and supported finding of valid waiver).

**9.      Right To Speak With Egyptian Consulate**

The factors listed by the Court in *Garibay* are not exhaustive.  This Court should consider all relevant information to determine whether Mr. Shabban freely, knowingly, intelligently and voluntarily waived his *Miranda* rights.  One factor, as mentioned above, is whether the agents granted Mr. Shabban's request to speak to the Egyptian Consulate.  By signing the VCCR, the United States promised that foreign nationals would have access to their consulates in the event of their arrest.   To allow government agents to break this promise risks having foreign government agents behave in a similar fashion in dealing with American citizens traveling abroad.

Mr. Shabban is entitled to the presumption that had he spoken to the Consulate, he would have been urged to remain silent, informed of his right to speak with an attorney in his native language, and members of the Consulate may have come to participate in the interview.  This

7

more prudent course would have deprived the government of the single most compelling item of evidence against Mr. Shabban as he faces a trial on a charge of parental kidnapping.

## CONCLUSION

The totality of the circumstances surrounding the September 25, 2006 interview indicate that Mr. Shabban did not knowingly and voluntarily waive his *Miranda* rights. Mr. Shabban, therefore, respectfully requests that the Court suppress all statements obtained in violation of these rights.

Respectfully submitted,


_____/s/_____
STEVEN J. McCOOL
D.C. Bar No. 429369
MALLON & McCOOL, LLC
1776 K Street, N.W.
Suite 200
Washington, D.C. 20006
(202) 393-7088

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th of February 2007, the foregoing Motion to Suppress

Statements was served by electronic filing upon:

Angela Schmidt
U.S. Attorney's Office
  for the District of Columbia
555 4th Street, N.W.
Washington, D.C.  20530

_____/s/_____
Steven J. McCool

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | )  **Criminal No.  06-290 (RMC)** |
| | ) |
| **KHALED MOHAMED SHABBAN** | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

**ORDER**

Upon consideration of Defendant Shabban's Motion to Suppress Statements and Memorandum of Points and Authorities in Support Thereof, the government's Response thereto, and the record of the evidentiary hearing in this matter, it is this _____ day of February 2007, hereby

**ORDERED**, that Defendant Shabban's motion is granted; and it is further

**ORDERED**, that the statements of Mr. Shabban's elicited by government agents are suppressed.

_____
THE HONORABLE ROSEMARY M. COLLYER
UNITED STATES DISTRICT JUDGE